1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA

4            v.                        19 CR 490 (RMB)

5  JEFFREY EPSTEIN,
                                       Conference
6              Defendant.

7  ------------------------------x
                                       New York, N.Y.
8                                      July 8, 2019
                                       2:00 p.m.
9  Before:

10         HON. RICHARD M. BERMAN

11                                     District Judge

12

13
           APPEARANCES
14

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   ALEXANDER ROSSMILLER
17 MAURENE R. COMEY
   ALISON G. MOE
18      Assistant United States Attorneys

19

20 REID H. WEINGARTEN
   MARTIN G. WEINBERG
   MARC FERNICH
21      Attorneys for Defendant

22

   Also Present:
23

        AMANDA YOUNG – Special Agent FBI
24      PAUL BYRNE – NYPD
        KEYANA POMPEY – Probation Officer
25      LEA HARMON – Probation Officer

1          (Case called)

2          THE COURT:  Good afternoon.

3          I think I'm pretty much up to speed as to where you

4   are in the sense that I am aware that you have been before

5   Magistrate Judge Pitman earlier this morning and up to some few

6   minutes ago for purposes of presentment, arraignment, and some

7   preliminary discussion of bail.  Is that accurate?

8          MR. ROSSMILLER:  That's correct, your Honor.  I don't

9   want to speak for defense counsel, but my understanding is they

10  expect to put in some sort of written submission and return to

11  argue the rest of the bail hearing on Thursday before Judge

12  Pitman at 2:00.  That is, if your Honor refers the bail hearing

13  to Judge Pitman on that basis as well.

14         THE COURT:  I might just take that bail application

15  before me.  We'll figure out a time when that would be

16  comfortable for all of you.  How is that?

17         MR. WEINGARTEN:  That's fine with the government, your

18  Honor.

19         THE COURT:  I have a few items on my list.  I want to

20  make mention, I'm sure Magistrate Judge Pitman did, of our

21  presumption of innocence.  Even though in some of these

22  discussions, and probably more so when we get to bail, it may

23  sound like we are talking about merits of the case, it's

24  important that we underscore that the presumption of innocence

25  pertains to Mr. Epstein, now and until such time, if it comes,

1   that there is a guilty determination by a jury or by the Court,

2   that he is presumed to be innocent.

3          I did have these questions.  One has to do with

4   persons who are categorized as victims.  I want to get some

5   assurance from the U.S. Attorney's office that they have been

6   notified about this case and that you will keep them abreast of

7   developments in this case.

8          MR. ROSSMILLER:  Yes, your Honor, we are acutely aware

9   of our obligations to the victims in this case.  We have

10  notified them and we expect to continue to do so as the case

11  moves forward.

12         THE COURT:  Second, for my background, I am aware that

13  there are certain conditions that attach to Mr. Epstein's sex

14  offender status resulting from his Florida state prosecution in

15  or about 2008.  One result is that under New York law --

16  correct me if I'm wrong about any of this -- he is considered

17  to be at high risk of committing another sex crime with minors.

18  Is that a fair characterization of his sex offender status?

19         MR. ROSSMILLER:  Your Honor, as the government set

20  forth in its submission to Judge Pitman, and we copied this

21  Court, it is our understanding that the defendant is a tier 3

22  sex offender in New York and that that is characterized as

23  high-risk individual.

24         THE COURT:  The question that I have is what are the

25  implications, if any, of the search conducted by the U.S.

1    Attorney's office over the weekend of Mr. Epstein's residence

2    on East 71st Street for the terms and conditions of his sex

3    offender status, if any?  Are there any consequences or

4    relationship between what was uncovered and what he is obliged

5    to do?

6              MR. ROSSMILLER:  May I have one moment, your Honor?

7              THE COURT:  Yes.

8              MR. ROSSMILLER:  Your Honor, in response to that

9    question, at the outset I should say that we don't have

10   particular interaction with state authorities with respect to

11   those types of notifications.  We are, I would say, in the

12   early stages of reviewing those materials.  With respect to the

13   defendant's obligations or potential consequences in the New

14   York State system, we certainly will notify whichever

15   authorities are appropriate.  I don't think that we have a role

16   other than that.

17             I will say that they are extremely concerning with

18   respect to bail here, with respect to the conduct here, and I

19   expect we will get into that more in our submissions and bail

20   argument.

21             THE COURT:  By the way, if defense counsel wants to

22   jump in at any point, feel free to do that?

23             MR. WEINGARTEN:  On that, we have not seen the

24   pictures.

25             THE COURT:  I haven't either.

1          MR. WEINGARTEN:  I understand.  It is our expectation

2     that they are ancient, that they are pre his spending time in

3     prison, and/or they are erotic pictures of adults who

4     voluntarily engaged in that conduct.

5          THE COURT:  I have a question about the Southern

6     District of Florida nonprosecution agreement dated probably in

7     2008 -- is that correct?

8          MR. ROSSMILLER:  It's dated in 2007, your Honor.

9          THE COURT:  Is that a public document?

10          MR. WEINGARTEN:  It is, your Honor.  It's been

11     publicly filed in connection with other civil litigation.

12          THE COURT:  Does that agreement bear on in any way the

13     search and results of the search that were conducted at Mr.

14     Epstein's townhouse over the weekend?

15          MR. ROSSMILLER:  Not in ways that I am aware of now,

16     your Honor.  Again, we are very much in progress on the search.

17     We will continue to consider any other implications beyond this

18     case as we continue to review those materials.

19          On a separate note, your Honor, I want to add the

20     government noted it is aware of its victim obligations.  In

21     terms of notification, we have made notification to individuals

22     that we are in particular aware of.  We also have listed a

23     phone number for victims to be in touch with the FBI, with the

24     U.S. Attorney's office.  We have also put a website up and have

25     asked victims to be in touch with us through those sources as

1  well.  That is just to round out the notification that the U.S.

2  Attorney's office has made.

3            MR. WEINGARTEN:  May I be heard briefly on that?

4            THE COURT:  Sure.

5            MR. WEINGARTEN:  For us, your Honor, the NPA is the

6  center of the universe for everything, search included, because

7  the NPA was the result of an extensive 3-year investigation by

8  law enforcement in Florida.  In essence, the Feds made Mr.

9  Epstein plead to a state offense and they declined prosecution

10  federally, and that is translated in the NPA.  Mr. Epstein did

11  his time, Mr. Epstein is on the registration list, and Mr.

12  Epstein paid the alleged victims.

13            As I am sure you have noted from the indictment, that

14  conduct too is an ancient history.  That conduct is 2002 to

15  2005.  It is our belief that this is basically a re-do.  This

16  is basically the Feds today, not happy with what happened in

17  the decision that led to the NPA, redoing the same conduct that

18  was investigated 10 years ago and calling it, instead of

19  prostitution, calling it sex trafficking.  We think that is the

20  heart of everything, and that will be the centerpiece of our

21  defense, at least legally.

22            THE COURT:  My understanding of what the government is

23  asserting is that the episodes that occurred in Manhattan were

24  not included in the nonprosecution agreement in Florida and

25  that there is a separate basis not only for a sex trafficking

1   count but also for a sex trafficking conspiracy count.

2          MR. WEINGARTEN:  We have had good conversations with

3   the prosecutors, and we like and respect them.  We are looking

4   forward to getting discovery.  We are interested to see whether

5   the prosecutors in Florida, who are now under severe criticism

6   10 years later, steered the alleged victims to New York,

7   whether or not they violated their responsibilities under the

8   NPA.

9          THE COURT:  Whether the federal prosecutors in Florida

10  violated their terms and conditions?

11         MR. WEINGARTEN:  That will certainly be germane.

12         THE COURT:  Is that the point?

13         MR. WEINGARTEN:  Yes.

14         THE COURT:  Got it.

15         MR. ROSSMILLER:  Your Honor, if I could very briefly

16  respond to those points?

17         THE COURT:  Sure.

18         MR. ROSSMILLER:  I expect this will be briefed and

19  argued on Thursday.  I don't intend to go into extensive

20  details about that.  I just want to flag for the Court that

21  defense counsel is saying that this conduct is ancient.  What

22  he is not saying is it is beyond the statute of limitations,

23  because it is not.

24         Second, the allegation that this is some kind of a

25  conspiracy within the Department of Justice is just false.

1   There is no evidence to support that.  The investigation was

2   begun and conducted entirely separate from any other district.

3   It began in the Southern District of New York.

4          Certainly there is evidence that was gathered that is

5   consistent with and even overlapping with the prior

6   investigation.  But as the Court noted, in particular an entire

7   count of this indictment is with respect to New York victims.

8   And that is before we even get to the fact that the

9   nonprosecution agreement does not bind the Southern District of

10  New York.

11         THE COURT:  I was going to ask you about that too.

12  Now that you have mentioned the topic, explain that, would you.

13         MR. ROSSMILLER:  Yes, your Honor.  I do expect that we

14  can brief this, but the short version is that this prosecution

15  is not precluded by the nonprosecution agreement entered into

16  by the defendant in the Southern District of Florida.  That

17  agreement expressly referred to that federal district.  It

18  didn't purport to bind any other office or district.

19         It is well-settled in the Second Circuit that a plea

20  agreement in one U.S. Attorney's office does not bind another

21  unless otherwise stated.  That is even if, based on case law,

22  the agreement refers generally to "the government."  Again,

23  additionally, as set forth in the indictment returned by the

24  grand jury, the substantive count alleges acts occurring in New

25  York and alleges New York-based victims.

1          That is in spite of the fact that the Southern

2    District is not bound, is not a signatory to, and otherwise has

3    no connection to the NPA.  And there is no evidence that we

4    have come across that the Southern District of New York was

5    consulted, asked, involved, notified as far as we have seen.

6          For those reasons and others I'm sure we will brief,

7    we don't think the NPA applies to us.

8          MR. WEINBERG:  If I may reply briefly, your Honor?

9          THE COURT:  Yes.

10         MR. WEINBERG:  I have been one of Mr. Epstein's

11   counsel through the CVRA litigation which started in 2008 and

12   continues.  In fact, our briefing is today.  The NPA provided

13   him with immunity for any offenses arising from a joint

14   FBI/grand jury/U.S. Attorney investigation that led to a

15   decision by Mr. Epstein to plead to a higher state offense than

16   the state prosecutors contemplated.  He went to jail, signed an

17   agreement, and has lived up to its terms 100 percent.

18         We have seen in the paperwork of the CVRA, in the

19   Southern District of Florida, in writing at docket 205-2 the

20   government's motion to dismiss CVRA, urging that the witnesses

21   there go to the Southern District of New York and essentially

22   try to motivate them to prosecute for the very same conduct, in

23   other words, the conduct that Mr. Epstein was immunized,

24   including travel between two states, telephonic communications

25   between two states.  Florida immunized him for the same travel

1    and telephonic communications as well as the 1591 category.

2            In addition, the Department of Justice reviewed the

3    NPA on several occasions in 2008 and essentially confirmed that

4    the exercise of discretion shown in Florida was appropriate.

5    But the most important thing is that there was communication

6    between the prosecutors in Florida, perhaps through prosecutors

7    in Georgia that took over the case because the Florida

8    prosecutors were recused as a result of Judge Marrah's

9    decisions in the CVRA case.

10           We know the government is relying in part on evidence

11   that was generated by the Southern District of Florida case

12   back in 2007.  They have talked about message pads, telephone

13   records.  They are the same message pads and telephone records

14   that reflect conduct that was exclusively 15, 16, 17 years ago.

15   So we do have a principal position that we will put to the

16   Court at the appropriate time regarding the legality of this

17   prosecution and whether or not it is appropriately barred.

18           I can say as a criminal defense lawyer of 45 years,

19   when there is an interstate wire, mailing, travel, and there is

20   one district that is conducting an investigation, you negotiate

21   with that district and count on the Department of Justice to

22   what it does every day decade after decade after decade, which

23   is not to go to the second jurisdiction that received the mail

24   that was sent from the immunizing jurisdiction and have a

25   prosecution on the very same conduct.  We will be briefing

1    that.

2              THE COURT:  Do you anticipate that there is going to

3    be any discussion here about the legality of the NPA?

4              MR. WEINBERG:  Not the legality of the NPA.  I think

5    the discussion here is going to be about its scope.

6              THE COURT:  From the defense, yes.  You don't think

7    you expect to hear anything from the government, for example?

8              MR. WEINBERG:  In the Southern District case, the CVRA

9    case, maybe two weeks ago the Northern District of Georgia

10   prosecutors, who are proxy for the Southern District of

11   Florida, filed the submission before District Judge Marrah in

12   the CVRA case totally supporting the constitutionality and

13   legality of the NPA, their discretion to enter into it, and

14   that there absolutely has never been a charge that Mr. Epstein

15   ever did anything other than fully perform his end as a citizen

16   who is expecting the benefits of a contract that he lived up

17   to.

18             THE COURT:  I thought there had been some contention

19   that the way that the victims vis-a-vis the Florida NPA were

20   dealt with or not dealt with was one basis for attacking the

21   legality of that arrangement.

22             MR. WEINBERG:  The petitioners are vigorously and have

23   vigorously for many years challenged, many years starting quite

24   frankly after Mr. Epstein performed his obligations to go to

25   jail and challenged it, claiming that there was no consultation

1   prior to the government's entering the agreement.

2          The Department of Justice at the time did not believe

3   the CVRA extended absent a federal charge.  The predicate is a

4   federal crime that harms a victim.  The petitioners have

5   vigorously asserted a different position.  Judge Marrah, in a

6   summary judgment motion, agreed with the petitioners as to the

7   fault of the government in not conferring.  The issue of remedy

8   is before Judge Marrah at the present time, your Honor.

9          THE COURT:  Okay.

10         MR. ROSSMILLER:  Your Honor, if I may very briefly?

11         THE COURT:  Yes.

12         MR. ROSSMILLER:  The crux of the defense argument here

13  I think cuts precisely the other way.  They are arguing that

14  the Southern District of Florida has sort of sent up a flag

15  that these prosecutions could be undertaken elsewhere.  That's

16  true.  The Southern District of Florida has argued in papers

17  that they believed, the Southern District of Florida believed,

18  that the nonprosecution agreement was limited to that district.

19  They have said that out loud and in public and in their

20  positions in filing.

21         So certainly this investigation was not shoveled to

22  the Southern District of New York from anywhere else, including

23  the Department of Justice.  We expect that the nonprosecution

24  agreement will not be an impediment, in particular because the

25  defendant certainly did not lack for sophisticated counsel in

1    negotiating that agreement, which again did not include the

2    Southern District of New York.  We don't expect that to be any

3    impediment at all here.

4            THE COURT:  Got it.

5            This is a small item.  In the pretrial services report

6    which was prepared today -- how many, if more than one,

7    passports does Mr. Epstein have?

8            MR. WEINGARTEN:  Mr. Epstein reported today one.  Two

9    others were rescinded.  As we understand it, there is one

10   effective passport today.

11           I would like to make one other point about the

12   pretrial that is extremely important.

13           THE COURT:  Go ahead.

14           MR. WEINGARTEN:  The way it reads is that we have

15   refused to provide information about income and assets.

16           THE COURT:  I didn't really read it that way myself.

17   I thought it was incomplete in some places and I thought it

18   could be beefed up, so to speak.  But I imagine that in the

19   bail application those matters may be dealt with.

20           MR. WEINGARTEN:  Exactly.

21           THE COURT:  For Mr. Rossmiller:  In your letter you

22   describe some obstruction or harassment, witness tampering,

23   alleged, by Mr. Epstein.  That, I take it, is going to be

24   included in any response or any bail submission made by the

25   government?

1          MR. ROSSMILLER:  Your Honor, I think we addressed that

2     in our initial submission.  To the extent defense counsel has a

3     response to it, we will evaluate that response and see whether

4     additional submission from the government is required or

5     appropriate.

6          THE COURT:  I think that's it for me in terms of

7     questions that I might have had.

8          There is, of course, a conspiracy charge here, one of

9     the two counts.  It may be early in your investigation to know.

10    Do you anticipate that there may be other defendants in this

11    proceeding?

12         MR. ROSSMILLER:  Your Honor, we don't expect any

13    imminent superseding indictments in this case.  It certainly is

14    possible down the road.

15         MR. WEINGARTEN:  May I make one point, your Honor?

16    These obstruction allegations we find very nettlesome and

17    bothering.  My understanding is that the Feds and Mr. Epstein's

18    attorneys back in the early 2000s, or 2007 and 8, when they

19    were negotiating were looking desperately for an appropriate

20    statute.  They finally settled on a state statute that Mr.

21    Epstein pled to.  We all know how unusual that is.  There was

22    some consideration of a federal statute, including obstruction.

23         So lawyers in good faith were having discussions back

24    and forth whether or not they could squeeze Mr. Epstein's

25    conduct into a particular statute, and they concluded they

1   couldn't because the facts didn't fit.  That is my

2   understanding of how those obstruction discussions arose.

3            THE COURT:  Got it.

4            In terms of bail application, it would be helpful, and

5   maybe this is your anticipation, to file written submissions.

6   If you could do that.  What I'm getting to is Thursday

7   afternoon is not a good time, in my opinion.  I would prefer to

8   do it, if you would go along with this, Monday morning at, say,

9   9:30.  That would give everybody more time to make these

10  submissions and to study them.  Is that agreeable?

11           MR. WEINGARTEN:  Yes.

12           MR. WEINBERG:  Yes.

13           THE COURT:  Why don't we say Monday at 10:00.  Have

14  you arranged written submissions on any time schedule with

15  Magistrate Judge Pitman?

16           MR. ROSSMILLER:  May we have just a moment, your

17  Honor, with defense counsel?

18           THE COURT:  Yes, would you.  And also determine if one

19  party or the other is going first and that the other is

20  responding or they are simultaneous.

21           MR. ROSSMILLER:  Yes, your Honor.  Thank you.

22           (Pause)

23           MR. ROSSMILLER:  Your Honor, the government is

24  prepared to rely on its initial submission at least for its

25  first argument.  I expect defense counsel will respond to that

1    and propose a package.  Then the government would like an

2    opportunity to reply to that submission.

3           The parties would be happy to make those deadlines

4    Thursday and Saturday respectively.  However, we are also happy

5    to back that up a little bit if the Court prefers not to

6    receive the government's submission over the weekend.  We could

7    do an earlier deadline on Thursday for defense and a late

8    Friday deadline for the Court from the government, depending on

9    what the Court prefers.

10          THE COURT:  I was going to propose defense Thursday at

11   noon.  Is that okay to get your submission in?

12          MR. WEINBERG:  We can do that, your Honor.

13          THE COURT:  Thanks.

14          And if you could respond Friday by 5:00 p.m.

15          MR. ROSSMILLER:  We will, your Honor.  Thank you.

16          THE COURT:  Then we can have oral presentations.  I

17   take it everybody wants to have oral presentations in addition

18   to the written.  I'll set aside as much time as we need on the

19   15th at 10:00.

20          I ask the government if there is a speedy trial issue

21   or application that takes us to Monday at 10:00 a.m.

22          MR. ROSSMILLER:  Yes, your Honor.  The government asks

23   that speedy trial time be excluded until Monday.  We do expect

24   to begin the process of working on producing discovery, to

25   include discussions with defense counsel about a protective

1    order.  I think, frankly, the outcome of that will be effected

2    by the coming week.  But we do expect to have those

3    conversations and therefore request that speedy trial time be

4    excluded until Monday.

5              THE COURT:  I am going to find under 18 United States

6    Code 3161 that the request for adjournment, joined in by both

7    sides, to and including Monday the 15th at 10:00 a.m., is

8    appropriate and warrants exclusion of the adjourned time from

9    speedy trial calculations.

10             I further find that the exclusion is designed to

11   prevent any possible miscarriage of justice to facilitate these

12   proceedings and, initially at least, so that counsel has time

13   to prepare written bail submission and to guarantee effective

14   representation of and preparation by counsel for both sides.

15   Thus, the need for exclusion and the ends of justice outweigh

16   the interests of the public and the defendant in a speedy trial

17   pursuant to 18 U.S.C. section 3161(h)(7)(A) and (B).

18             Does anybody want to add anything to today's session?

19             MR. ROSSMILLER:  Your Honor.  May we have one more

20   moment with defense counsel?

21             THE COURT:  Sure.

22             (Pause)

23             MR. ROSSMILLER:  Nothing from the government.  Your

24   Honor.

25             THE COURT:  Defense?

1          MR. WEINBERG:  Nothing from the defense, your Honor.

2          THE COURT:  Nice to see you all.  See you on Monday.

3   Thank you.

4          (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25