

# EDWARDS HENDERSON
## THE CRIME VICTIM LAW FIRM

| Florida Office | Telephone (954)524-2820 | New York Office |
|---|---|---|
| 425 North Andrews Avenue<br>Suite 2<br>Fort Lauderdale, FL 33301 | Fax (954)524-2822<br><br>info@cvlf.com | *By Appointment Only* |

*File + Docket*

February 1, 2026

SO ORDERED:
Date: **2/2/26**    *Richard M. Berman*
Richard M. Berman, U.S.D.J.

**VIA E-MAIL**
The Honorable Richard M. Berman
The Honorable Paul A. Engelmayer
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, New York, New York 10007
bermanNYSDchambers@nysd.uscourts.gov
usanys.epsteinmaxwellvictims@usdoj.gov

Re:    ***United States of America v. Jeffrey Epstein*, 1:19-cr-00490 (RMB)**
       ***United States of America v. Ghislaine Maxwell*, 1:20-cr-003330 (PAE)**

RE:    **EMERGY REQUEST FOR IMMEDIATE JUDICIAL
       INTERVENTION—EPSTEIN TRANSPARENCY ACT**

Dear Judge Berman and Judge Engelmayer,

We write on behalf of victims of Jeffrey Epstein regarding an unfolding emergency that requires immediate judicial intervention.

On Friday, January 30, 2026, the Department of Justice publicly released more than 3.5 million Epstein-related documents while failing to redact victim names and other personally identifying information in thousands of instances—despite repeated representations that redaction was the sole reason for delayed release and DOJ's acknowledgment that failure to redact would cause extraordinary harm to victims.

Concerns regarding victim protection and the necessity of proper redactions were first raised with Attorney General Pam Bondi on February 28, 2025, following her release of "The Epstein Files: Phase 1." *See* Letter attached as **Exhibit A**. On August 5, 2025, the undersigned sought assistance from Judge Berman to ensure the DOJ's compliance with the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"), while DOJ navigated initial document requests and releases. *See* Letter attached as **Exhibit B**.

The public interest in transparency related to Jeffrey Epstein then caught a tailwind, and on November 12, 2025, the House Oversight Committee released 20,000 documents into the public

*United States of America v. Jeffrey Epstein*
February 1, 2026
Page 2

domain, littered with failed redactions, causing widespread panic amongst the survivors of Jeffrey Epstein all over the world.

On November 19, 2025, the Epstein Files Transparency Act was signed into law as H.R. 4405. On November 25, 2025, the undersigned again wrote to the Court raising serious concerns regarding victim privacy and protection under the CVRA. *See* Letter attached as **Exhibit C**. The Court directed DOJ to consult with counsel for all victims prior to releasing victim-sensitive information. As a result, by December 4, 2025, DOJ had a comprehensive list of victims whose names would be redacted in any release of information pertaining to Jeffrey Epstein.

DOJ's first release under the Act occurred on December 19, 2025. Despite victims' collective belief that the agreed-upon redactions would be honored, that belief was misplaced. On December 20, 2025, the undersigned immediately notified DOJ of hundreds of redaction failures, including unredacted names and dates of birth and the urgent need to redact a single document identifying more than 30 victims. The undersigned further advised DOJ that we had received:

> COUNTLESS messages from women who this release is actively harming. Women who trusted me and trusted you to ensure that this would not happen. Women who are in direct contact with you and with your office regarding the prevention of the disclosure of their names. These same women have been up all night using DOJ's search bar to identify and read every single document that was posted publicly identifying them despite being promised by your office that this would never happen.

Throughout January, the undersigned continued to engage with DOJ to address redaction failures and privacy violations, with the expectation that such failures would not recur—or at minimum would be promptly corrected. That expectation was shattered on January 30, 2026, when DOJ committed what may be the single most egregious violation of victim privacy in one day in United States history.

Within the past 48 hours, the undersigned alone has reported thousands of redaction failures on behalf of nearly 100 individual survivors whose lives have been turned upside down by DOJ's latest release.

DOJ's letters to Judge Berman dated January 30 [DE 98] and January 31, 2026 [DE 99] bear no resemblance to what has actually occurred. DOJ claims to agree "with the Court that protecting victim-identifying information should be paramount" and asserts that it undertook a "rigorous, victim-oriented approach." [DE 98]. DOJ further represents that more than 500 attorneys and reviewers participated, including over 200 from SDNY, with the objective of identifying and producing materials while redacting information that could identify victims. *Id.*

There is no conceivable degree of institutional incompetence sufficient to explain the scale, consistency, and persistence of the failures that occurred—particularly where the sole task ordered by the Court and repeatedly emphasized by DOJ was simple: redact known victim names before publication. By way of example only, on January 30, 2026, DOJ published:

*United States of America v. Jeffrey Epstein*
February 1, 2026
Page 3

1. Documents in which Minor Victim 1 had her name revealed 20 times in a single document. After reporting the violation, DOJ redacted her name three additional times—leaving 17 instances still unredacted as of this filing.
2. An email listing 32 minor child victims, with only one name redacted and 31 left visible—despite DOJ's possession of those names.
3. FBI 302 victim statements with full first and last names unredacted, including for minor victims.
4. Handwritten FBI interview notes with minor victims' full names unredacted at the top and throughout.
5. Documents containing victims' names alongside dates of birth, bank information, driver's license numbers, email addresses, or home addresses.
6. Documents where victims' names are redacted in some places but not others within the same document.
7. Documents where redactions are pencil-thin, revealing the complete name and email address beneath.
8. Documents where photographs are properly redacted in one instance and appear fully unredacted nearby.
9. Hundreds of documents exposing the names of four women who have been in near-constant communication with DOJ since December requesting protection.

DOJ cannot plausibly characterize this as error, negligence, or bureaucratic failure. The task was straightforward: take the list of known victims and redact those names everywhere they appear. When DOJ believed it was ready to publish, it needed only to type each victim's name into its own search function. Any resulting hit should have been redacted before publication. Had DOJ done that, the harm would have been avoided.

Instead, DOJ left its public search tool active at https://www.justice.gov/epstein/search and placed the burden on victims to search for and discover their own exposure—after the damage had already occurred. Even after DOJ was notified of unredacted disclosures, DOJ required victims to provide individual document links rather than conducting name-based searches itself. In multiple instances, DOJ has redacted only the specific links provided while leaving dozens of additional search results unredacted. For instance, when we attached 21 links to an email and indicated there were 51 additional search results where a victim's name was online unredacted, DOJ only made redactions to the 21 documents, inexplicably refusing to redact the remaining 51.

The undersigned cannot continue this impossible task alone. Victim communications have escalated from concern to suffering and fear for personal safety. The following sentiments—shared verbatim—have been expressed by at least 20 clients:

> **Jane Doe 1:** "There is vendetta happening in [my home country]. I am getting threats and name calling, saying that they hope I get justice for all the girls I have used for prostitution. I didn't take any girl to fly to Jeffry ever. They are saying I worked with some [man] but I don't know him. I am so afraid."

> **Jane Doe 2:** "Unfortunately, it seems that all of my emails are un[redacted], and

quite a few articles have already been published about me. . . There are hundreds of threads containing my personal information shared by the DOJ, including even my home address, and it's likely that this reporter could extract more content and publish it in the future. . . I have already received distressing messages via email and Messenger that stigmatize me, even though none of my emails harmed anyone. Im scared whats to happen to me next..."

**Jane Doe 3:** "It is so wrong on so many levels. Not only it exposes victims to potential abuse or blackmail, but it can ruin families or damage our careers. I am horrified.."

**Jane Doe 4:** "Here, many newspapers and websites are publishing everything about us. Including pictures. And I'm getting disgusting private messages and a flood of followers on social accounts. How is this possible? In [my home country], as in the entire EU, there is a strict privacy law. I'm shocked, I didn't expect such violation of our privacy."

**Jane Doe 5:** "I have never come forward! I am now being harassed by the media and others. This is devastating to my life. . . Please pull my name down immediately as every minute that these document with my name are up, it causes more harm to me. . . Please, I'm begging you to delete my name!!! I can only imagine the devastation your errors are causing to so many other victims of Jeffrey Epstein. Wasn't the only job to redact victim names? Hasn't every person with authority promised repeatedly that victims have nothing to worry about because our names will be redacted? Hasn't the entire delay of producing documents been allegedly because you have been redacting names?"

**Jane Doe 6:** "The release of this information is not only profoundly distressing and retraumatizing, but it also places me and my child at potential physical risk. . . . I am struggling to understand how such an egregious failure to redact occurred, particularly given the sensitive nature of the materials and the foreseeable risks associated with their public disclosure. This situation has reopened trauma I have worked diligently to overcome, and it has done so in a manner that feels both careless and dangerous.

**Jane Doe 7:** "My name and personal information including my full address have not been redacted yet on the files already released. To the contrary, more files including my personal information and even a PHOTO of mine have been released. . . . I am especially in a life threatening situation because I live overseas in [my home country] where I received many death threats because of Epstein. The press makes up crazy stories and shows me as a legitimate target for others to attack me physically and in the press. My life is in imminent danger as long as you keep on releasing more files and info about me and not remove and redact the ones already released.. . . This is a life threatening situation for me. Please take my plea seriously."

**Jane Doe 8:** "It has been 24 hours and I'm getting death threats whilst nothing is being done. You even had the audacity to release my private banking info and [I] am now trying to shut down cards and accounts. This kind of vicious attack on a victim at the hands of the "Department of Justice" is an abomination. I demand you immediately remove these 51 entries as required by law."

It is no longer ethical, moral, or responsible to attempt to remedy these violations through DOJ's torturously tedious game. This was never a complex undertaking. DOJ has possessed the names of victims that it promised to redact for months. A simple name search would have prevented this entirely. Yet even now, after 48 hours of seeking additional redaction, thousands of pages remain unredacted in the public domain. The process of applying proper redactions should take DOJ hours, not days or months. Simply type in a victim name to the search bar, and if there are any results then apply redactions before publishing. DOJ has proven incapable or unwilling to effectuate that basic task.

Accordingly, we seek immediate injunctive relief on behalf of the victims and respectfully request that the Court order:

1. Immediate takedown of the DOJ website hosting Epstein materials;
2. A comprehensive name-based search of all hosted documents using the victim list;
3. Proper redaction of all references to victims' first, last, or full names;
4. Appointment of an independent Special Master to oversee redaction and republication;
5. Reservation of jurisdiction for sanctions, including contempt and monetary relief.

Done correctly and with competent supervision and intention, the entirety of the documents could be re-published, with proper redactions, within a day of taking them down. For the victims of Jeffrey Epstein, every hour matters. The harm is ongoing and irreversible. This Court is the last line of defense for victims who were promised protection and instead were exposed. Judicial intervention is not merely appropriate—it is essential.

Respectfully submitted,

EDWARDS HENDERSON, PLLC

Brittany Henderson
Brad Edwards